UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                                                  CASE NO.  8:24-cr-237-SDM-AAS

HEATHER DARREY

## UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum in support of a sentence for Defendant Heather Darrey at the low-end of the guideline imprisonment range of 41 months to 51 months, as calculated under the United States Sentencing Commission 2023 Guidelines Manual. In support thereof, the United States submits the following:

### I.     Factual Background

From October 2023 to March 2024, Heather Darrey violated one of the most basic moral imperatives—*thou shalt not steal*—by embezzling $875,323.19 of Church #1's money for her own personal enrichment. Darrey conducted a scheme in which she created false and fraudulent bank checks drawn against Church #1's business bank account and made payable to her personal bank account, as well as to her mortgage company, creditors, and others.

For nearly 25 years Darrey worked for Church #1, 14 of those years as the Records and Finance Manager. Her duties included, among other things, the payment of invoices by generating printed bank checks, presenting bank checks for signature to authorized account signatories, mailing bank checks for payment, and

inputting payments into Church #1's accounting software system. Church #1's congregation, and its priests and staff undoubtedly had a high degree of trust in Darrey as a steward of the operating funds for the church. Unfortunately, Darrey abused that trust.

As to the specifics of how Darrey committed the scheme to defraud Church #1, Darrey inputted data from invoices into Church #1's accounting software system to prepare payments to vendors that had rendered services to Church #1. The accounting software allowed Darrey to generate printed bank checks in the amounts owed to the vendors. Darrey then presented the printed bank checks to signatories on Church #1's bank account for authorization and signature. After the checks were authorized and signed, Darrey destroyed the authorized printed bank checks, prepared new handwritten bank checks in the same amounts as the legitimate ones but made payable to her personal accounts and creditors, and forged the signature of a signatory. She then mailed or hand delivered the handwritten checks to her personal banks or creditors. Afterwards, Darrey inputted fraudulent data into Church #1's accounting software system to give the false appearance that she had mailed the printed bank checks approved to be issued to Church's #1's vendors.

For instance, on or about October 19, 2023, Darrey inputted payment data into Church #1's accounting software system from an invoice for electrical services rendered to Church #1. Darrey generated a printed check to pay the invoice in the amount of $29,474.12 and presented the check to a signatory on Church #1's Financial Institution #1 bank account. After the printed bank check was authorized

and signed, Darrey destroyed the check, prepared a handwritten check in the amount of $29,474.12 made payable to a Financial Institution #2 account that Darrey controlled, and forged the signature on the check. Darrey then mailed the check to Financial Institution #2 for deposit, which caused an interstate wire transfer in the same amount. Darrey also inputted false and fraudulent data into Church #1's accounting software system to make it appear that she had paid the invoice for electrical services of $29,474.12.

Church #1's finance department detected irregularities in their accounting software system and uncovered Darrey's involvement. Darrey's supervisors questioned her on or about March 27, 2024.[1] She admitted to stealing funds from Church #1's Financial Institution #1 account but attempted to minimize the amount of money she had illegally obtained. Church #1 then terminated Darrey. When staff cleaned out Darrey's office they found a paper bag with $51,625 in cash from the church offertory. The next day, Darrey emailed the head pastor of Church #1 and again admitted to stealing funds from Church #1. In addition, she begged for Church #1 not to contact the authorities and press charges.

An audit of Church #1's accounting software and bank accounts revealed an actual loss amount of at least $875,323.19 in funds stolen by Darrey between October 2023 and March 2024, using the above-described fraudulent scheme. A review of Darrey's financial records revealed expensive purchases of concert and show tickets,

---

[1] That same day, Darrey had already used Church #1's credit card without permission to charge $647.81 at a grocery store for ice, soft drinks, and gift cards to various stores.

luxury goods, payments to her home mortgage, and other purchases for herself and others.

Darrey worked as a Records and Finance Manager for a church, but her conduct was more consistent with a common fraudster who preys upon a vulnerable, unsuspecting victim to acquire personal wealth. Darrey's sentence should reflect it.

## II. Sentencing Guidelines Calculation

### a. Total Offense Level

The United States Probation Office ("USPO") correctly calculated Darrey's total offense level as 22 and her criminal history as a category I. PSR ¶ 61. Based upon a total offense level of 22 and a criminal history category of I, the guideline imprisonment range is 41 months to 51 months. *Id.* The maximum statutory fine is $1,750,646.38, pursuant to 18 U.S.C. § 3571(d). PSR ¶ 67. The guideline fine range for a total offense level of 22 is $15,000 to $150,000 pursuant to USSG § 5E1.2. PSR ¶ 69.

### b. Abuse-of-Trust Enhancement Is Applicable

The Court should apply a two-level enhancement pursuant to USSG § 3B1.3 because Darrey abused a position of trust. Section 3B1.3 states that such an enhancement applies where a defendant was in a position of "public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. The guideline commentary provides a specific definition of a position of "public or private trust."

> A position of public of private trust is one characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult).

USSG § 3B1.3 App. n. 1. Therefore, the abuse-of-trust adjustment "applies only where the defendant has abused discretionary authority entrusted to the defendant by the victim ...." *United States v. Garrison,* 133 F.3d 831, 837 (11th Cir. 1998) (quoting *United States v. Jolly,* 102 F.3d 46, 48 (2d Cir.1996)); *see also United States v. Walker,* 490 F.3d 1282, 1300 (11th Cir.2007). Additionally, the Eleventh Circuit has explained that USSG § 3B1.3 applies in the fraud context where the defendant is in a fiduciary, or other personal trust, relationship to the victim of the fraud, and " the defendant takes advantage of the relationship to perpetrate or conceal the offense." *Garrison,* 133 F.3d at 838 (quoting *United States v. Koehn,* 74 F.3d 199, 201 (10th Cir.1996)).

Darrey served as the Records and Finance Manager, a position of private trust, who was responsible for maintaining Church #1's accounting software, posting deposits, and issuing payments at Church #1. She used her position in a manner that significantly facilitated the commission of this crime and made the detection of her fraudulent scheme more difficult. Indeed, Darrey abused her access to Church #1's checkbook, which she exploited for her own personal gain, and to the accounting

5

software she inputted false and fraudulent data into to mislead her co-workers and avoid detection. Her position of trust and access given by Church #1 was integral in facilitating the commission of the instant offense. *See e.g., United States v. Milligan,* 958 F.2d 345 (11th Cir. 1992) (enhancement applicable to postal clerk who embezzles money; court notes difference between postal employee who is audited infrequently, and bank teller who is subject to daily audits); *United States v. Cruz,* 317 F.3d 763, 767 (7th Cir. 2003) (upholding enhancement for office manager with no discretion to make payments and no authority to sign checks in part because she was able to steal nearly $121,000 from employer over two years); *United States v. O'Connell,* 252 F.3d 524, 528-529 (1st Cir. 2001) (office manager/bookkeeper, embezzlement offense).

    Besides the trust of the members of Church #1's finance department and the signatories of the account she forged, there was a greater trust violated by Darrey: *the faith of Church #1's congregation*. Darrey served as a steward of the church's finances, including those earmarked for a large construction project occurring on its campus. Darrey squandered charitable donations of parishioners who trusted that the funds would be appropriately spent for the church's improvement plans.

    For these reasons, the two-level enhancement for abuse of a position of trust is warranted for Darrey.

### c. Substantial Financial Hardship to the Victim Enhancement is Applicable

This two-level specific offense characteristic is applicable because Darrey's crime resulted in substantial financial hardship to Church #1. USSG § 2B1.1(b)(2)(A). In relevant part, Application note 4(F) provides that courts shall consider, among other factors, whether the offense resulted in the victim becoming insolvent; filing for bankruptcy; making substantial changes to his or her employment, such as postponing his retirement plans; and suffering substantial harm to his or her ability to obtain credit. *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1252 (11th Cir. 2017); USSG § 2B1.1 cmt. 4(F). This also includes the victim "suffering substantial loss of…a savings or investment fund." USSG § 2B1.1 cmt. 4(F)(iii).

In determining "substantial financial hardship" under the Sentencing Guidelines, the offense-level enhancement is subject to the usual and significant degree of discretion afforded a district court during sentencing. *United States v. Poulson,* 871 F.3d 261, 268 (3d Cir. 2017). Courts use a sliding scale that is fairly subjective. The Eleventh Circuit, relying on other circuits for guidance, has held that a substantial financial hardship may occur in instances where a victim's pecuniary loss may appear relatively small because "[t]he same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup." *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1252–53 (11th Cir. 2017) (quoting *United States v. Minhas*, 850 F.3d 873, 877 (7th Cir. 2017)). Therefore,

the severity of a financial hardship generally depends on both the value of the loss and the victim's financial means, and therefore is "relative" to the victim's wealth. Indeed, the determination of "substantial financial hardship" is not based on those numbers alone; just as the Guidelines do not require a specific dollar amount to qualify as a "substantial financial hardship," they also do not require the loss of a specific percentage of the victim's wealth. *See Castaneda-Pozo,* 877 F.3d 1249 (11th Cir. 2017); *United v. Poulson,* 871 F.3d 261 (3d Cir. 2017).

Church #1 is conducting a $7 million building project that includes a new center for children and youth and a reconfiguration of their north parking lot. The monies for this project were to come from the General Operating account, the same account Darrey stole from. Darrey coincided her illegal scheme with the commencement of the project and the larger than usual outflow of funds to pay Church #1's bills, which she manipulated to obfuscate her theft. Because Darrey stole nearly $1 million, the victim no longer has the funds on hand to cover the project, which will force the parish to take out a loan. This will result in funds that would have been used for various ministries and outreach being applied to cover loan repayments, and inevitably, suffer from a lack of resources.

The specific offense characteristic is applicable for the reasons stated above and contained in the victim impact statements. PSR ¶ 18.

### III.   Section 3553(a) Factors and Recommendation for a Reasonable Sentence

The United States submits that an imprisonment sentence calculated under the United States Sentencing Commission 2023 Guidelines Manual is appropriate given the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, and other factors under 18 U.S.C. § 3553(a).

While the government can appreciate Darrey's efforts to pay back the full amount of restitution and a portion of the forfeiture, it simply cannot erase the seriousness of the crime she committed and the need for a just punishment.[2] Darrey used her ill-gotten gains to live an expensive and lavish lifestyle. More specifically, a review of Darrey's financial accounts revealed that she deposited approximately 50 checks in various personally held bank accounts. The following table details Darrey's expenditures during the six-month period of the scheme:

| Amount | Transaction Description |
|---|---|
| $44,302.45 | Payment for Vehicle Loan |
| $78,728.05 | Payment for Boat Loan |
| $284,759.41 | Mortgage Payments for Primary Residence |
| $453,138.10 | Financial Institution #2 Credit Card Bill |

The following table details some of the purchases Darrey made with her Financial Institution #2 credit card during the six-month period of the scheme.

---

[2] In October 2024, the Darreys sold their residence to fulfill the restitution and forfeiture obligations. As of the date of this filing, Darrey has paid the full amount of restitution and $300,995.63 in forfeiture.

9

| Amount | Type of Purchase |
|---|---|
| $14,008.33 | Clothing Stores |
| $8,882.31 | Food/Restaurants |
| $1,021.75 | Nails/Hair |
| $51,015.78 | Concert and Show Tickets |
| $18,729.66 | Hotels/Vacations |
| $8,857.96 | Luxury Good Purchases |
| $88,711.65 | Other Misc. Purchases |

On May 2, 2024, law enforcement went to Darrey's residence and questioned her regarding the stolen funds from Church #1. Darrey admitted to the fraudulent scheme and received a target letter. When law enforcement visited Darrey on May 2, 2024, the pickleball court depicted in the photograph below did not exist.

*Photograph of Former Residence*



*Photograph of Boat Docked at Former Residence—Payments Made with Stolen Funds*



10

Further investigation revealed an email to Darrey dated March 21, 2024, of a nearly $19,000 price quote from a concrete construction company to lay the cement court. In short, Darrey proceeded with the construction of the pickle ball court after Church #1 terminated her and after law enforcement informed her of the federal investigation. Darrey then retained defense counsel and executed a plea agreement on May 23, 2024. Doc. 4. She entered a guilty plea on June 6, 2024, which the Court accepted on June 25, 2024. Docs. 13, 17, and 19.

  Indeed, Darrey purchased a vehicle, a boat, trips, clothes, and concert tickets with donations to Church #1 and reserved for an improvement project. She violated the most basic moral imperative—*thou shalt not steal*—for foolish material items. Her thievery has negatively impacted Church #1's youth programs, damaged the trust of the church's congregation, and disrupted Church #1's mission of providing for the needs of its parishioners and students. An imprisonment sentence is well-warranted.

  The United States requests a sentence for Darrey at the low-end guideline imprisonment range of 41 months to 51 months because it is an appropriate sentence to reflect the nature and circumstances of the offenses, affords adequate deterrence to criminal conduct, and complies with other 3553(a) factors.

## IV.   <u>Conclusion</u>

For the reasons set forth above, the United States submits a sentence at the low-end of the guideline imprisonment range of 41 months to 51 months is an appropriate and reasonable sentence for the defendant.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:  <u>/s/ *Gregory D. Pizzo*</u>
      Gregory D. Pizzo
      Assistant United States Attorney
      FL Bar No. 41914
      400 North Tampa Street, Suite 3200
      Tampa, Florida 33602
      Telephone: (813) 274-6000
      E-Mail: Gregory.pizzo@usdoj.gov

U.S. v. DARREY                                      Case No. 8:24-cr-237-SDM-AAS

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

 Scott Boardman, Esq.

         */s/ Gregory D. Pizzo*
         Gregory D. Pizzo
         Assistant United States Attorney
         FL Bar No. 41914
         400 North Tampa Street, Suite 3200
         Tampa, Florida 33602
         Telephone: (813) 274-6000
         Facsimile: (813) 274-6103
         E-Mail: Gregory.pizzo@usdoj.gov