UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 8:24-cr-237 |
| | ) | |
| Heather Darrey, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM ON BEHALF OF HEATHER DARREY
<u>IN AID OF SENTENCING</u>

Scott Boardman, Esquire
David Scott Boardman, P.A.
1710 E. Seventh Avenue
Tampa, Florida 33605

DATE: November 8, 2024

I.    INTRODUCTION

This memorandum and accompanying exhibits are provided for the Court's consideration on behalf of Heather Darrey, who is scheduled to be sentenced on Wednesday, November 13, at 9:00 a.m.

Following a guilty plea to an Information, on May 29, 2024, Mrs. Darrey stands convicted of one count of Wire Fraud in violation of 42 U.S.C. § 1343.  The offense of conviction does not carry a mandatory sentence.  Mrs. Darrey's guideline range, according to the PSR, is 41 - 51 months' imprisonment.

The guideline range is an "initial benchmark," a starting point to be consulted but that is ultimately no more than one of numerous factors to be weighed when selecting a disposition that is sufficient but not greater than necessary to satisfy the purposes and goals set forth in 18 U.S.C. § 3553(a).  See Gall v. United States, 552 U.S. 38, 49-50 (2007); Kimbrough v. United States, 552 U.S. 85, 90 (2007); 18 U.S.C. § 3553(a)(4).  The primary objective here is to "make an individualized assessment based on the facts presented."  Gall at 50; see also Koon, 518 U.S. at 98 ("district court must make a refined assessment of the many facts bearing on the outcome"); 18 U.S.C. § 3661.  As in every case, the court's overriding duty is to determine and impose the punishment which is "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a).  Significant in this regard, the Guidelines do not, as a matter of course, provide courts with a "sufficient but not greater than

necessary" individualized sentence that matches offense with offender.  Rita v.

United States, 551 U.S. 338, 350 (2007), accord Nelson v. United States, 555 U.S.

350 (2009) (*per curiam*).

Here, there are myriad factors that support the imposition of a probationary

sentence: her speedy acceptance of responsibility for her actions; her sincere and

substantial efforts at post-offense rehabilitation; the goals of sentencing (see §18 U.S.C.

3553(a)); Mrs. Darrey's extremely low likelihood for recidivism; Mrs. Darrey's

extraordinary efforts to make restitution in full prior to sentencing; Mrs. Darrey's

exceptional efforts to satisfy the forfeiture prior to sentencing, and for any combination

of the foregoing (see U.S.S.G. §  5K2.0).

As seen herein, since the initial incident and both the public and official rebuke of

her actions, Mrs. Darrey has taken significant, concrete strides to return to a law-

abiding life.  Imprisonment, while providing a measure of punishment (retribution),

does not achieve or advance the other recognized goals of sentencing in this case.  What

the record most clearly demonstrates is the strides Mrs. Darrey has made during the

pendency of this case.  Her removal from the community provides little-if-any societal

benefit.

Heather Darrey is a loving and supportive mother and wife. She appreciates

fully the impact of her behavior.  We respectfully submit that a sentence of

probation is sufficient but not greater than necessary to satisfy 18 U.S.C. §

3553(a)'s stated goals.  More than anything, this case calls for a period of community-based supervision and programming through which Heather can continue to re-establish a law-abiding life.  Such a disposition is reasonable, sufficient and not greater than necessary to achieve the ends of retribution, incapacitation, deterrence and rehabilitation.

II.    HISTORY AND CHARACTERISTICS/NATURE OF THE OFFENSE

18 U.S.C. § 3553(a)(1), 42 U.S.C. § 3631

This section is intended to address, in part, Mrs. Darrey's history and characteristics as well as the nature and circumstances surrounding the instant offense.  See 18 U.S.C.  § 3553(a)(1), 42 U.S.C. § 3631.  It is not intended to duplicate the Probation Office's review of Mrs. Darrey's personal background.  Instead, this section supplements the PSR by offering additional insight into Mrs. Darrey's character and background, drawing from exchanges with Mrs. Darrey and her family, as well as a number of letters submitted on her behalf by members of her church and community.

Mrs. Darrey began her association with Christ the King Church as a child.  She began volunteering there in 1994. See Letter from Monsignor Michael Muhr.[1]  Mrs. Darrey was employed by Christ the King Church for twenty years. See Letter

---

[1] All letters referenced in this document, as well as additional letters of support are included at the end of this document.

from Katrina Urso. She was hired by the Church initially to oversee the nursery as she had demonstrated an ability to work with children. <u>See</u> Letter from Monsignor Michael Muhr. She met her husband, Mr. Steve Darrey while employed at Christ the King. <u>See</u> Letter from Steve Darrey. Steve is a Captain with Tampa Fire Rescue, a firefighter and first responder. <u>See</u> "Victim Impact Statement" from Reverend Leonard Plazewski. Heather is the mother of two children: Jackson, aged seventeen, and Ella, aged fourteen. Steve's job with Tampa Fire Rescue keeps him from the family for extended periods, especially when there is a natural disaster occurring, leaving the responsibility for the children to fall on Heather's shoulders during these times. Ella was diagnosed with an aortic contortion at age two. She recently had open-heart surgery in April of 2024.

The reality of Ella's upcoming surgery had a negative psychological impact on Heather. Mrs. Darrey's thefts from the church began around the time that the surgery was being discussed. As a reaction to this stress, Mrs. Darrey began misappropriating funds from the church and spending those funds. Mrs. Darrey does not seek to excuse her behavior, but she has been struggling to understand it through regular therapy sessions and family therapy sessions, attending such sessions multiple times a week. Many people in the community have expressed shock that Heather could have committed this crime as there was never any prior indication that she was capable of such acts. Her actions were entirely inconsistent

with her character. <u>See</u> Letter from Monsignor Michael Muhr; Letter from Most Reverend David Toups; Letter from Dennis Jones; Letter from Katrina Urso; Letter from Doug Sutton; Letter from Mr. and Mrs. Frank Gomez; Letter from John Weir; Letter from Deana Nelson; and Letter from Clare Bennett.

The Darreys bought their home eleven years ago for approximately $810,000. The Darreys were not rich and this may appear to be an extravagance for a firefighter and a secretary. This ignores the fact that the property contained both an apartment and a second smaller house that were generating income at the time of the purchase. Due to this, the bank granted them a mortgage with a small down payment, and they were able to complete the purchase due to a loan from Steve's cousin. Steve also works as a contractor, and he was able to make many improvements to the property over the years. Once Heather entered a plea, the Darrey's put their home on the market in order to pay restitution to the Church in full. This money has been received by the Church.

The Darreys were in the process of buying a new home when Hurricane Helene struck. Prior to closing, Steve had moved their belongings into the new home as well as installing appliances. This property was severely damaged by flood waters and their personal property was destroyed. None of this property was covered by insurance as the deal had not closed. They lost approximately $30,000

in belongings. The seller refused to repair the home and the deal fell through. They have been living in an Air B&B ever since the hurricane.

Not only Heather, but her husband and children have been affected by her actions. The children lost their childhood home and Steve lost his dream house and the proceeds of much of his career to help Heather pay her obligations to the church and forfeiture obligations to the Government.

III.        AVAILABLE SENTENCES — § 3553(a)(3)

Imprisonment is not statutorily required in this case.  See PSR ¶ 65 (probation eligible with a fine, restitution, or community service).  When considering an appropriate sanction, consideration should be given to data from the Federal Register that establishes that in 2022 the average cost to incarcerate someone like Mrs. Darrey would cost taxpayers over $42,000 annually. [2]

IV.        THE SENTENCING RANGE ESTABLISHED — § 3553(a)(3)

As noted in the Introduction, Mrs. Darrey's guideline range per the PSR is 41-51 months' imprisonment.  Incarceration is not required in this case and probation is an acceptable option.   Mrs. Darrey asserts that the guidelines range as calculated by the Government is inaccurate in the following regards:

---

[2] https://www.federalregister.gov/documents/2023/09/22/2023-20585/annual-determination-of-average-cost-of-incarceration-fee-coif#:~:text=Based%20on%20FY%202021%20data,$37%2C012%20($101.40%20per%20day).

## A.    Abuse of Trust Enhancement is Inapplicable

The Defendant contends that the classification of the offense as an abuse of a private trust, under USSG §3B1.3 is in error. The PSR lists the Defendant's employment at Christ the King as the "records and finance manager" and states her duties consisted of "the payment of invoices by generating printed bank checks, presenting the bank checks for signature to authorized account signatories, mailing bank checks for payment, and inputting payments into the church's accounting software system." The title of the position and the listed tasks performed are not congruent. While the title may suggest a managerial role, Mrs. Darrey did not act as a manager. She had no employees answering to her and no discretion in the performance of her tasks. Her duties were clerical and secretarial.

USSG §3B1.3 App. Note 1 defines public or private trust:

Trust".—"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller

8

or hotel clerk because such positions are not characterized by the above-described factors.

Mrs. Darrey's's role at Christ the King was not akin to the role played by an attorney, a bank executive, or a physician. All three of these roles require a professional duty to the client, institution, or patient. See United States v. Hussey, 254 F.3d 428, 432 (2d Cir. 2001) citing United States v. Jolly, 102 F.3d 46, 49 (2d Cir.1996) (explaining that to occupy a "position of trust," a defendant must generally have a "fiduciary-like relationship[ ]" with his victims). "The guideline enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required." United States v. Brunson, 54 F.3d 673, 678 (10th Cir. 1995).

> Because "there is a component of misplaced trust inherent in the concept of fraud," United States v. Mullens, 65 F.3d 1560, 1567 (11th Cir.1995), cert. denied, 517 U.S. 1112, 116 S.Ct. 1337, 134 L.Ed.2d 487 (1996), a sentencing court must be careful not to be "overly broad" in imposing the enhancement for abuse of a position of trust or "the sentence of virtually every defendant who occupied any position of trust with anyone, victim or otherwise" would receive a section 3B1.3 enhancement, United States v. Moored, 997 F.2d 139, 145 (6th Cir.1993).

United States v. Garrison, 133 F.3d 831, 838 (11th Cir. 1998).

In its United States Sentencing Memorandum, the Government cites to United States v. Milligan, 958 F. 2d 345 (11th Cir. 1992). See Doc. 33. p. 6. That case held that a postal employee, a post office window clerk, abused a position of public trust when he embezzled monies after lying in order to obtain multiple copies

of disc-based software to move money and disguise his crimes. In <u>Mullens</u>, *supra*, the Eleventh Circuit cautioned against the application of the enhancement where a public trust was not involved, specially noting the fact that the defendant in <u>Milligan</u> was a government employee. <u>Mullens</u> at 1567. Additionally, the Sixth Circuit, in United <u>State v. Tribble</u>, 206 F. 3d 634, 636-637 (2000), noted that in cases like <u>Milligan</u>, too much emphasis had been placed on the degree of supervision over an employee, and instead called for examining the role in the context suggested by the guidelines: "The examples given in the application notes (physician, attorney, and fiduciary) imply that the inherent nature of the work itself should naturally convey a substantial degree of discretion to the defendant concerning how to properly administer the property of another or otherwise act in their best interest." <u>Tribble</u>, at 637.

It is apparent that Mrs. Darrey was trusted by the administration of Christ the King, and it apparent that this trust was abused, but such an abuse of trust does not rise to the level contemplated by the guidelines as Mrs. Darrey was not in a position where she exercised discretion or had any decision-making authority. The Defendant has received a "victim impact" letter from a Ms. Wendi Pena, where her title is listed as the Director of Finance and Operations, indicating that Ms. Darrey was not in a position to make financial decisions. Mrs. Darrey reported to Ms. Pena, who exercised a discretionary role in assigning tasks to Mrs. Darrey. While the

Defendant may not have been subject to a great degree of supervision, which allowed the theft of considerable funds, the fact of this lack of supervision does not transform her position into one of a "position of trust." The government's florid assertion that the Defendant violated the trust "of *the faith of Church #1's congregation*" is not contemplated by the guidelines and is certainly not relevant to USSG §3B1.3.

Respectfully, the two-level increase for the role in the offense is adjusted improperly. The Defendant was not in a position of trust as contemplated by the guidelines. The Defendant's total offense level should therefore be sixteen. With a total offense level of sixteen, the guidelines fine amount would therefore be adjusted to a fine of between $10,000 to $95,000, pursuant to USSG §5E1.2(c)(3).

**B.  Substantial Financial Hardship Enhancement is Inapplicable**

The final PSR imposed a two level upward adjustment under USSG § 2B1.1(b)(2)(A) "as Darrey's crime resulted in substantial financial hardship to the victim of the offense." Referring to the application notes, at USSG § 2B1.1 App. note 4(F)(iii), the Government asserts that such an increase is warranted despite conceding that the enhancement is "relative" to the victim's wealth. See Doc. 33, p. 7-8. The Government asserts there is a financial hardship because Christ the King "is conducting a $7 million building project" and the monies were to come from the "General Operating Account," which is the same account that the instant from

11

which the monies were stolen. The relative wealth of the Church is unknown and has not been provided to Mrs. Darrey. It is presumably vastly more than the $7 million dollar building project. Of this $7million, Mrs. Darrey can be said to have depleted approximately 12.5%. The actual loss to the Church is likely a much smaller percentage of its wealth. A substantial financial hardship cannot be determined without knowing the relative loss of wealth to the victim.

The Government has obtained a "victim impact" statement from the Rev. Leonard Plazewski, which indicates a large portion of this building project is for the "expansion and reconfiguration" of a parking lot. The full text of USSG § 2B1.1 App. note 4(F)(iii) states that a two-point increase is appropriate where the offense results in the victim, "suffering substantial loss of a retirement, education, or other savings or investment fund[.]"

The loss suffered by Christ the King is not a loss to such a fund. A general operating account is, commonly, a business checking account designed for operations where revenue and receivables are deposited and through which all operating costs are paid. It is not the type of long-term savings or investment account contemplated by the note. It is not even clear that the general operating account in question is an interest-bearing account, which would seem to be, at a minimum, necessary for the application of this specific offense characteristic.

The Government further asserts that the loss from the general operating account will result in Christ the King having to take out loans to complete their construction projects, which in turn "result in funds that would have been used for various ministries and outreach being applied to cover loan repayments." These activities, while certainly within the purview of the church's mission, are not critical to the continuing viability of the church as an ongoing operation, and a temporary reduction in these services does not create a substantial financial hardship. According to United States v. George,

> Our interpretation of section 2B1.1(b)(2) accords with that of other courts of appeals that have examined the provision. As the Seventh Circuit has explained, "whether a loss has resulted in a substantial hardship ... will, in most cases, be gauged relative to each victim," and "[t]he same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup." United States v. Minhas, 850 F.3d 873, 877 (7th Cir. 2017); accord United States v. Castaneda-Pozo, 877 F.3d 1249, 1252 (11th Cir. 2017) (per curiam) ("[T]he inquiry is specific to each victim."); United States v. Brandriet, 840 F.3d 558, 561 (8th Cir. 2016) (per curiam) (examining the impact of the conduct on "the cost of [the victim's] living expenses").

949 F.3d 1181, 1185 (9th Cir. 2020). Per the PSR, the total amount of stolen funds amounts to  $875,323.19. While this would normally be a significant amount, if Christ the King has the funds to complete a $7 million construction project, the general operating account was left with $6,124,767.81 earmarked to complete the project, or over 87%. Of course, it is likely that there are far more funds available to the church within the general operating account and other sources. This is not a

"substantial financial hardship" as contemplated by the guidelines for this particular victim as the church would be likely able to continue to meet its financial obligations and aspirations despite the loss. What is being completely ignored by the Government's Sentencing Memorandum, is that the Church, through extraordinary efforts and sacrifice by Mrs. Darrey, has been paid back every single penny of misappropriated funds. Instead of experiencing a substantial financial hardship, the Church has not even experienced a loss. As such, inclusion of the enhancement in Paragraph 26, and the concomitant inclusion of a two-point increase for "substantial financial hardship," is not appropriate in this case and the PSR has not accurately evaluated this criterion.

The PSR, at paragraph 31, fails to deduct two levels from the offense level as the Defendant meets the criteria under USSG §§4C1.1(a)(1)-(10) as a Zero-Point Offender. As the substantial financial hardship adjustment does not apply, the Defendant should benefit from the  two-level reduction  The Defendant should fall into the guideline fine range of $10,000 to $95,000 as her total offense level is properly assessed at sixteen.

V.    NEED FOR SENTENCE IMPOSED — § 3553 (a)(2)

Having given due consideration to a defendant's history and characteristics and to the nature and circumstances of the offense, supra, the Court must, subject to the principle of parsimony, identify a sentence that reflects the seriousness of the

14

offense, promotes respect for the law, provides a just punishment for the offense,

affords adequate deterrence to criminal conduct, and protects the public from

further crimes of the defendant, though "a particular purpose may apply differently,

or even not at all, depending on the kind of sentence under consideration." Tapia v.

United States, -- U.S. --, 131 S.Ct. 2382, 2387-88 (2011).  In other  words, the

Court is tasked with balancing the goals of sentencing in determining a fair and

appropriate disposition.  "The sentence imposed should be no more severe than

necessary to achieve the societal purposes for which it is authorized."  ABA

STANDARDS ON CRIMINAL JUSTICE, Sentencing 18-6.1(a), p. 219 (3rd ed.

1994); see id. 18-6.4(a), p. 227 ("A sentencing court should prefer sanctions not

involving total confinement in the absence of affirmative reasons to the contrary.").

Beginning with general deterrence, the arrest of Mrs. Darrey and the

publication of the details of Mrs. Darrey's criminal conduct have likely served a

deterrent effect upon the members of her broad community. Any deterrent effect in

this case has largely been achieved by the conviction of Mrs. Darrey, standing

alone.  A probationary sentence, following conviction, adequately informs the

citizenry that conduct such as Mrs. Darrey's will not be tolerated by the public or

the government.  Additionally, little to no deterrent effect upon the general public

would be achieved by the imposition of an incarcerative sentence in this case.  See

Kittrie, et al., SENTENCING, SANCTIONS AND CORRECTIONS: FEDERAL

AND STATE LAW, POLICY, AND PRACTICE, 29 (2d ed. 2002) ("Generally speaking, … legal and sociological scholars have raised serious questions about the power of any *punishment* to deter crimes.") (emphasis added).

A more relevant consideration seems to be specific deterrence, that is, Mrs. Darrey's likelihood of recidivism.  See, e.g., USSC, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements at14 n55 (1987); U.S.S.G., Ch. 4, Pt. A intro. comment.  The law recognizes that a term of imprisonment is not required for a sentence to have a desired deterrent effect on a defendant who, like Mrs. Darrey, has not been incarcerated previously. Given the very specific facts of this case, as well as Mrs. Darrey's background, the likelihood of Mrs. Darrey reoffending curves towards zero.  Additionally, when considering specific deterrence relative to reducing the risk of reoffense, it is important to recognize, as the Sentencing Commission has, that "[r]ecidivism rates decline relatively consistently as age increases."  USSC, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 12 (2004).  The Commission's findings are consistent with empirical data that confirms the desistance of criminal activity as offenders age.[3]  Mrs. Darrey is currently forty-

---

[3] These figures are taken from AE Bottoms, Crime Prevention for Youth at Risk:  Some Theoretical Considerations, Resource Material Series No. 68 (2006, Simon Cornell, ed.) and Kelly Richards, What makes juvenile offenders different from adult offenders?, Trends & Issues in Crime and Criminal Justice (Feb. 2011), respectively.

four years old. A woman of her age, even were she to have a criminal history, is statistically unlikely to ever again commit a crime.

At some point, incarceration serves no meaningful purpose but to effect punishment for punishment's sake. Mrs. Darrey has already been punished for her actions. In addition to already making full restitution for all monies taken, Mrs. Darrey also must pay the Government in forfeiture. Every penny paid in forfeiture is punishment for her offense. Not only is she being stripped of ill-gotten gains, but also of everything she has ever earned or saved. It is well-established that criminal forfeiture serves only as punishment for an offense.

> See United States v. Hoffman–Vaile, 568 F.3d 1335, 1344 (11th Cir.2009) (rejecting argument that appellant's forfeiture amount should be reduced because she had already paid restitution to the other victims, noting, "[a]lthough 'this might appear to be a 'double dip,' restitution and forfeiture serve different goals.' ") (brackets added and omitted) (quoting United States v. Leahy, 464 F.3d 773, 793 n. 8 (7th Cir.2006)); United States v. Joseph, 743 F.3d 1350, 1354 (11th Cir.2014) ("We have held that a defendant is not entitled to offset the amount of restitution owed to a victim by the value of property forfeited to the government, or vice versa, because restitution and forfeiture serve distinct purposes.") (emphasis added; citations omitted). "While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice...." Joseph, 743 F.3d at 1354 (alteration added; citations omitted). Consistent with this principle, we have held that preindictment, voluntary restitution does not affect the amount of any forfeiture. See United States v. Browne, 505 F.3d 1229, 1280–81 (11th Cir.2007).

U.S. v. Bailey, 630 Fed. Appx. 902 (11th Cir. 2015). Clearly Mrs. Darrey is being punished severely by the forfeiture in this case. In addition to the $875,323.19

already paid to the church, a feat only accomplished by selling her and her husband's home of eleven years, Mrs. Darrey has paid $300, 995.63 to the US Secret Service, which is the entirety of her remaining share of the equity in the home. Mrs. Darrey has signed over her full 401k in the amount of $31,711.88. Mrs. Darrey has agreed to sell her and her husband's boat and turn over the entire equity to the Government. Clearly the punitive goals of sentencing have largely been achieved through forfeiture.

Indeed, it is well recognized in the law that imprisonment is not a proper vehicle by which to achieve rehabilitation.  See Tapia, 131 S.Ct. at 2390 ("Do not think about prison as a way to rehabilitate an offender."); 18 U.S.C. § 3582(a); 28 U.S.C. § 994(k).  It seems incontestable that a prompter return to the community with appropriate supervision and services, better advances the ends of justice in this particular case.

VI.    <u>REQUESTED DISPOSITION</u>

For the above reasons, as well as any others that the Court may find

appropriate and just, undersigned counsel respectfully submits that a sentence of

probation is sufficient and not greater than necessary to achieve the ends of

retribution, incapacitation, deterrence and rehabilitation.

Respectfully submitted,

BY: /s/ Scott Boardman
    D. Scott Boardman, Esquire
    David Scott Boardman, P.A.
    1710 E. Seventh Avenue
    Tampa, Florida 33605
    (813) 248-0704
    Fax: (813) 241-0704
    dsboardman@delagranaboardman.com

<b><u>CERTIFICATE OF SERVICE</u></b>

I HEREBY CERTIFY that on this 8th day of November, 2024, I electronically

filed the foregoing document with the Clerk of Court using the CM/ECF system, which

will serve a notice of electronic filing on the following: Gregory Pizzo, Esq *Attorney*

*for the United States* .

     /s/ Scott Boardman
     D. Scott Boardman, Esq

19



**ST. LAWRENCE**
CATHOLIC CHURCH

5225 N HIMES AVE, TAMPA, FL 33614-6623
813.875.4040 | WWW.STLAWRENCE.ORG

August 15, 2024

Honorable Judge Steven Merryday
Judge of United States District Court for the Middle District of Florida
801 N Florida Avenue
Tampa, FL 33602

Your Honor Judge Merryday

I am writing this reference letter for Heather Darrey as I firmly believe her actions of misappropriating
funds at her workplace do not represent her character or core beliefs. I have known her for over 30 years.

In 1994, Heather began volunteering in the Christ the King Catholic Church nursery which families
utilized for childcare while attending Mass or other parish events. At that time, I was the pastor of Christ
the King (1992-2001) and after witnessing her hard work and gift for working with children, I hired her in
1999 to oversee the nursey. In her working capacity she was always kind, sincere, thoughtful, responsible
and trustworthy.

Heather is also a wife and mother with two teenage children, Jackson and Ella. Realizing how important
parental guidance is in the vulnerable teenage years, I respectfully request that the care of these two
young people be taken into account.

In my decades-long relationship with Heather I am shocked by this event in the life of a good person
whose core values are diametrically opposed to what has occurred. I understand that Heather is in
counseling with extensive therapy to help her understand the root of this anomalous behavior. I am
grateful for the court's mercy in examining the fuller context of her life in this hearing. I hope that you
will be able to give her and her children every consideration.

Sincerely,

Monsignor Michael Muhr
Pastor

Katrina Urso
6111 N. Glen Avenue
Tampa, Fl 33614
trinaurso@aol.com
(813)610-7275
August 12, 2024

Judge Steven Merryday,

I am writing this letter to provide a character reference for my dear friend, Heather Darrey, who is currently facing charges for stealing money from the church where she worked. A church where I have been a parishioner for many years. Although it was very wrong to steal money, she has been a devoted and loyal employee of the church for 25 years and this lapse in judgment should not erase all the good she's done in our community and church through the years. Heather and I have been friends for at least 12 years. Our sons have played baseball together on various teams. Our friendship grew through the years, and we have spent a lot of time together, on and off the field. Despite this unfortunate incident, I can confidently say that she is a truly good person who deeply regrets her actions. In spite of her mistake, she's one of my most faithful friends who has helped me through horrible things that I've encountered in my life. She has been a constant source of help and support for my family. I still have full faith in her with my family, my kids, and our friendship.

Heather has always been a loving and caring mother to Ella and Jackson and a devoted wife to her husband, Steve. Heather extended her motherly care and love to all the kids connected to her own. She is a generous individual who has consistently opened her home to those in need, providing support and care to anyone who crosses her path. She would never let anyone go without. Her compassionate nature and willingness to help others have always been evident in her actions.

Since this incident, Heather has taken full responsibility for her mistake and has been actively seeking counseling and therapy to address the underlying issues that led to this lapse in judgment. She understands the gravity of her actions and is determined to make amends and rebuild trust within the community.

I sincerely hope that you can see it in your heart to give Heather an opportunity to make things right without imposing jail time. Incarceration would not only punish Heather but also have a profound and negative impact on her family. Her husband and two children, rely on her presence and support. Additionally, Jackson and Ella are at a crucial age where they need her guidance and support, and she excels at being a nurturing and understanding mother to them, aiding them through the challenges of adolescence. What she did was a huge mistake, and was very wrong. In my opinion, she's already been punished enough because she has had to regretfully live with the impact that it has had on her kids and husband. If you knew her, you would understand just how out of character this poor decision was for her. She wishes she could do anything to take this back.

Thank you for considering this letter. I truly believe that Heather has the potential to learn from this experience and become an even better person. She deserves a chance to prove that this one mistake does not define her character.

Sincerely,

Katrina Urso

Dear Judge Merryday,

My wife is Heather Darrey.  We have been married for 18 years and have known each other for 22 years. We met at Christ the King.

Heather is an incredible mother to our amazing children Jackson (16) and Ella (14).  I have been a Firefighter/Paramedic for the City of Tampa for 18 years.  My wife and I have been in our respective careers for nearly half our lives. We are stable people.

I was beyond shocked when she came to me several months ago admitting what she had done.  My wife is one of the most selfless people I have ever met.  She unconditionally does so much for others asking nothing in return making her such an impressive human being.

This situation is absolutely out of character for my wife. Despite the behavior she has shown, Heather is not a criminal. She immediately admitted her guilt and has sought therapy for which she is being treated 2-3 per week. Prior to this she has had a flawless record.

We have sold our dream home in order to make full restitution to the church. My wife is extremely remorseful for what she has done.  Our lives will forever be changed as the result of this situation.

Christ The King was everything to our family. Heather worked there for more than 25 years.  We were married there.  We sent our children to school there from prekindergarden through eighth grade.  Jackson and Ella have received all of their Sacraments there.  It was truly our home away from home.

Having Heather incarcerated would be devastating to me and debilitating to my young children. Their mother is already going to have the record as a felon. I am a Captain with TFR and I continue to work 24-48 hour shifts. Our children need her home during these crucial developmental stages in their lives.

I beg you to please have mercy on my wife and keep her home with my children.  I appreciate you taking your time to read this.

God Bless you sir.

Regards,

Steven Darrey

*Capt. Steven Darrey E19A*
*Tampa Fire Rescue*
*808 E. Zack St*
*Tampa, Fl 33602*
*813-323-2017*
**Steven Darrey**
**Fire Captain, Fire Rescue**
City of Tampa / 808 E Zack St / Tampa, Florida 33602
p: 813-259-1600 / c: 813-323-2017 / e: Steven.Darrey@tampagov.net



# CHRIST THE KING
## CATHOLIC CHURCH

August 8, 2024

The Honorable Steven D. Merryday
Sam Gibbons Federal Courthouse
 801 N Florida Avenue
Tampa, FL 33602

Dear Judge Merryday,

I wish I had more answers than I do.  I wish I knew why a trusted employee would steal from the parish that she grew up in and had worked at for twenty-five years.  I wish I knew why she would choose to hurt the financial well-being of our parish simply to live a lifestyle beyond her means.  I wish I knew what more she may have stolen. I wish I knew when this all started.  I wish I knew how she could so easily disregard the 10 Commandments and steal repeatedly.  I wish I knew what motivated her to do something like this in the first place.  Was it bad intent or perhaps a deeper psychological illness?  I don't know.  I wish I knew the answers to all these questions, but I have consigned myself to the probability that I will probably never really know.

As pastor of Christ the King Catholic Church, I feel deeply the fraud that was perpetuated on our parish community.  It was a total shock to the system, and I felt a profound sense of betrayal.  I am perplexed and confused as to why Heather Darry would ever do something like this.  She is no stranger. I have worked with her for the past fourteen years.  She has been a member of our parish community since childhood.  So many of my parishioners have expressed to me that what upset them the most was not the theft itself, nor even the gross amount of the theft, by rather the identity of the perpetrator.  This feels akin to a member of one's own family stealing from you and for no good reason.  Despite all of that, I want you to know that I feel no personal animus toward Heather.  Clearly what she did was completely wrong, and she has caused great harm to our parish community.  We are in the midst of a major building project which includes a new center for our children and youth. Part of that project includes a much-needed expansion and reconfiguration of our north parking lot.  The monies for this part of the project were to come from our General Operating account, the very same account that Heather stole from.  Because of her crime, the parish no longer has the funds on hand to cover this. If we are not made whole soon, we will be forced to take out a loan, thus meaning that funds that would have been used for various ministries and outreach will be tied up in a loan which will require payments with interest.  As pastor, my chief concern at the moment is that we be made financially whole and that the money stolen from the good people of Christ the King be returned as soon as possible.

821 South Dale Mabry Highway  Tampa, Florida 33609
Phone: 813-876-5841   Fax: 813-873-2426   Website: www.ctk-tampa.org

As I write this letter, I have no way of knowing the long-standing consequences that Heather Darry's actions will have on our parish. There is an implicit trust in a church when people contribute to a parish. I have found that the people of Christ the King are good, generous, and kind people. Many of them have worked hard in the areas of their respective professions and have done well for themselves. I never take for granted any gift given to the parish, no matter how large or small. I hope that the trust that the people of Christ the King have in me as their pastor and in their parish community has not be under minded. I hope that they will not reconsider the trust that they have placed in the parish over the years. That is why it is absolutely crucial that restitution be made as soon as possible. Heather chose to use the money she stole to live an extravagant lifestyle. There can be no defense for her theft. There can be no rationalization of her actions. There can be no justification for the wrong that she has done to the people of Christ the King and the people that we seek to serve in the larger community.

I have been told by some that I should ask you for a specific sentence of punishment. I do not even know how to do that. As a Catholic priest, I firmly believe that one must hate the sin, but love the sinner. I believe that God is both just and merciful. I do not envy your position and have the utmost respect for the judiciary and what our nation asks you to do, especially in the administration of justice of individuals. I know that every criminal has a family and every crime has victims. I know that you must ponder these weighty matters that impact both the future of individuals and the well-being of our society.

I cannot speak on how such a crime impacts or possibly even emboldens others. I do know Heather's family. I have taught both of her children at Christ the King School. Her husband Steve is a good and honorable man who serves our community as a firefighter. My heart goes out to them. I cannot even imagine the hell that they have been going through since they learned what she had done. I pray for the Darrey's every day. While the shame of this terrible act has kept them away from Christ the King, I want all of them to know that they are always welcome to return. I believe in forgiveness and redemption, and I believe that Christ the King parish is indeed a forgiving community.

As far as specific punishment, I will leave that to you and to Almighty God.

Pax,

Rev. Leonard J.M. Plazewski
Pastor



# DIOCESE OF BEAUMONT

### OFFICE OF THE BISHOP

August 14, 2024

To: The Honorable Steven Merryday

Reference: Heather Darrey

Dear Judge Merryday,

I am writing to you with regard to the upcoming sentencing hearing for Heather Darrey. I've known Heather since 2010 when I was pastor at Christ the King Catholic Church in Tampa. I believe that she was employee of the Church since 1999 and volunteered at the Church for five years prior. I am currently the Catholic Bishop of the Diocese of Beaumont in Texas, but have maintained many close ties to the Tampa community. The news of Heather's deception and theft broke my heart as well as that of all who know her.

It is my belief that the charges for which she's admitted guilt are not consistent with her character. With myself, the staff, and our parishioners she has always proven to be kind, caring, trustworthy and helpful. I observed her as a good wife and mother to her children.

It is my understanding that they have appropriately sold their home in order to make full restitution to the Church. Plus, I've been told that she is actively receiving counseling and therapy for what is believed to be mental illness and addiction.

It is my belief that Heather will better serve her husband, children, her large extended family and society by not serving time in prison. My prayer is that mercy prevails.

Sincerely yours,

Most Rev. David Toups
Diocese of Beaumont

**Dennis W. Jones**
**2501 Chateau Drive**
**Lutz, Florida 33559**

**TO:** The Honorable Judge Steven Merryday

**REFERENCE:** Heather Darrey

**FROM:** Dennis W. Jones

**DATE:** 16 AUGUST 20204

      I write today concerning the upcoming sentencing hearing for Heather Darrey. My first contact with the Darrey family was in October 2005 when I interviewed and then hired Steven at Tampa Fire Rescue. Within seven months Steven was married to Heather, and two children followed soon after.

      As Fire Chief for the City of Tampa and then Hillsborough County my ultimate responsibilities included personnel recruitment, hiring, training and discipline. I believe my performance record over 45 years in the fire service would substantiate that I was a good judge of character.

      During my tenure with Hillsborough County Fire Rescue, my wife and I were fortunate to spend social time with the Darrey family. The family has been in my home and we have been in their home on several occasions, and have dined numerous times in a small group setting. I have spent time with Steven and Heather, and have seen the kids grow along the way.

      I certainly do not condone what Heather has done, and understand all actions have consequences, but I strongly believe this behavior does not reflect Heather or her true character. I have watched her with her family and friends and known her to be a truly caring and compassionate person. She has been a strong positive influence on Jackson and Ella, now in their teens, through church involvement, sports, activities, and every aspect of these children's lives.

      I know Heather has been receiving counseling and going through intensive therapy. I also understand the family has agreed to make full monetary restitution. Having raised three children of my own, my wife and I can't imagine Steven without Heather at his side, or Jackson and Ella without their mom there to support them. Teenagers and young adults have a far greater chance of success in a two-parent home.

      I understand you have significant sentencing leeway as a Federal Judge. I trust you will strongly consider punitive measures without incarceration.

Respectfully,

Dennis W. Jones

To:    Judge Steven Merryday
        Reference – Heather Darrey

From:  Doug Sutton
        13508 Little Lake Pl.
        Tampa, FL 33613

Your Honor,

I have known the Darrey family for over 13 years.  My son Ben and Steve went through the fire academy together and have been best friends for nearly 22 years.  When my wife passed away I moved here to be with my family and was adopted into the close-knit firefighter fraternity.  Their homes were just a block apart and I shared meals in these homes, worked with these families as they made improvements to them and watched them as they nurtured and raised their children.  To me, the Darrey's are more than friends, they are family.

At least twice a month we are in each other's homes for meals, shared beverages or an evening cruising the lake.  I have gone to their children's athletic events, attended the funerals of their loved ones and the marriages of others.  Every year we in the spring we all go on a four day camping trip to Ocala and just last year we went on an Alaska cruise together.

That is a brief introduction of my relationship with this amazing family.  But the real intent of this letter is to share my opinion of Heather.  My first impression of Heather was that she was a very welcoming person.  She has a ready smile, an infectious laugh and a twinkle in her eye.  And she is an accomplished practical joker.  (She put an electronic cricket in my son's RV that had us looking for it for months!)  She is a dedicated wife and mother who supports her husband's stressful career as a fire fighter and the demands of his painting business.  I have been in of awe the time commitment she has made in support of Jay and Ella's athletic endeavors.  Sometimes managing to get them to two different places at the same time or attending out of town tournaments involving days.  I have seen her drop everything to help others in need.  But after all of that, I know her as a friend that would be there for me at any time or any place that I needed.  And I would do the same for her and her family.

I do not know why Heather did what she did, but I know that whatever motivated her was not out of need and was entirely out of character.  This event has devastated this family in every way possible; marritaly, financially, its' reputation in the community and the church and has had a ground-shaking impact on the children.  The realization of what Heather did, the strain between their parents, the fact that their lifestyle will change dramatically and possibly more importantly how is has changed the attitude of their peer group towards them has already had a dramatic effect on their personalities.  I can't imagine the further harm that would come to them by having their mother incarcerated, let alone how they would manage with a father whose profession takes him out of the home for 24+ hours at a time.

Sincerely,

August 8, 2024


The Honorable Judge Steven Merryday

Re:  Heather Darrey

Dear Judge, Merryday:

This letter is to address the case before you in Federal Court.  Myself, Myra Gomez and my husband, Retired Judge Frank Gomez, have known Heather Darrey for approximately 24 years.  The incident that took place at her employment at Christ the King Catholic Church was not the Heather that we know and love.  Heather is a very loving wife, mother, and friend.  She was raised in a very loving and supportive family.  She is a person who regularly goes to church and devotes many hours donating her time to help others.  We have been to several family gatherings at her home with her children, husband, and parents.  We have been out to dinner with Heather, and her husband Steve and our neighbors.

The impact of incarceration would be devastating to her children, who are still young and her husband, who is a City of Tampa Firefighter and works 24-hour shifts.  He also owns his own business which operates when not at the fire department.  Incarceration would be a terrible hardship for the family.

Heather has never been in any kind of trouble and is working hard in therapy and volunteering her time to help others less fortunate.  Please allow her to make restitution while at home surrounded by her family.

Respectfully,

*Myra and Frank Gomez*

Myra and Frank Gomez

Judge Steven Merryday

Reference:  Heather Darrey

My name is John Weir.  I have known Heather for 12 years.  I met Heather in 2012, when I was hired as the Director of Finance, Facilities and Administration.  We worked together from 2012 to 2020, when I retired.  During these eight years, Heather was one of 13 direct reports.  We have remained in contact since my retirement.

Heather was truly outstanding and she quickly evolved into my right hand person.  We worked very closely together every day.

Without question, Heather is perhaps the most caring, helpful and selfless person I have ever met, not just at CTK, but anywhere in my life.  There was nothing Heather wouldn't do for anybody. This was not limited at all to her written job description. She willingly did whatever was necessary in any situation, many times when nobody else would. No matter what the situation was, I knew I could always count on Heather. She volunteered for anything needed and she did everything with such a pleasant and positive attitude, as well as with complete humility.  It was never about her. What the task was and whose responsibility it was did not matter to her.  I can honestly say I don't remember her ever hesitating, complaining, saying she did not have the time or questioning "why me".  Not once. She was so giving of her time and expertise to anybody that needed her.

I also grew to know her Husband Steve and her two children Jackson and Ella very well too. In addition to being an active parishioner, Steve had a painting business and we used him many times. He took great pride in working with CTK and you could not find a more honest, hard working and giving man. I also spent a great deal of time with Jackson and Ella. They came into the parish office almost every day after school and always stopped by my office to chat.  They were always polite, happy and were clearly well adjusted kids.  It was obvious that they were a very close family and Steve and Heather were doing a great job as parents.

Heather was also an extremely hard working and dedicated employee.  I was amazed and so impressed with the personal sacrifices she made to balance her work load demands, demands of being a mom and also being a good wife.  I don't ever recall her missing a single event of the kids.  She ate lunch with them every day, attended almost every school mass and attended every school function, volunteering to help with many.  She was also the key person in helping them with their variety of outside activities.  She accomplished all of this without missing a beat at work. She did that through sacrifice.  She was the first into the office each day, coming in right after walking with the kids to school.  She left work early to attend to her kids, working with them on homework, taking them to various activities, making dinner, etc.  During this time, she was accessible to me and others at work, and

always picked up the phone, answered texts, etc. She worked late at night after putting the kids bed. No matter what time of day or night, I could always count on Heather for anything.  She did it all willing and with a 100% positive attitude.

I don't know why Heather did what she did, but I witnessed and experienced her every day for over eight years and can say with great confidence that this is not the person she is. You can't fake how you parent, treat others and do it all without ego or self interest so many years.  We worked too closely for some of this not to be noticeable if it existed.

I firmly believe that Heather is an amazing person who made a terrible mistake. I would trust her with anything. I also cannot imagine what losing her would be to her family.  Steve is a great dad, but works extremely hard with two jobs, being a fireman and also having his own business.  She has been the primary caregiver, and has been so active and present for Jackson and Ella that I believe it would devastate them.  She and Steve have a strong, thriving marriage and they are raising two happy, polite, grounded and well adjusted children.  In today's world, it is not often that I see such a close family.  Heather is clearly the glue.

I hope this helps. I am totally available for anybody who would like to speak further or ask me any questions. She is a special individual.

August 12, 2024

Judge Steven Merrryday
Re:  Mrs. Heather Darrey

Dear Judge Merryday,


Please allow this letter to serve as a character reference for Mrs. Heather Darrey, who I understand will come before your courtroom in the near future.  I have known Heather for over 15 years, having met her through her husband, Steve Darrey, who serves as a Tampa Firefighter.  Throughout that time, I have known her to be a dedicated wife and mother, a friend, and someone who is a hardworking member of the community.


When I learned about Heather's recent theft from Christ the King Church, I was totally shocked, and could only believe that her health was suffering, either physically or mentally.  I believe that her many friends and family had the same reaction.  I know that Heather is extremely remorseful for her actions, and I now know that she is seeking treatment for her health issues.  As a healthcare professional myself, I am glad to hear that she is addressing the root cause of the issue.


I understand that Heather plans to repay the entire amount that was taken from the church, along with an additional sum, as an indication of her extreme sorrow.  I would hope that this restitution, along with some type of required community service or other form of restitution, can prevent her from incarceration.  While I recognize the serious nature of the crime, I also believe that incarceration will further harm her, her children and her family.


Thank-you for the opportunity to share my character reference for Heather.

Sincerely,

Deana Nelson, RN
4017 W. Sevilla St.
Tampa, FL  33629

Dear Judge Steven Merryday,                                        August 11, 2024
Reference: Heather Darrey

My name is Clare Bennett. My husband and I have been members of Christ the King Catholic Church
(CTK) since the early 1990's after moving to Tampa. I first became acquainted with Heather Walker now
Heather Darrey, in the church nursery where she was one of the staff members taking care of our young
children during Sunday Mass.
I remember Heather as a sweet, shy young lady with a kind smile and gentleness toward me and our
children in her care.
In March 2010, I joined the staff of CTK as the Director of Outreach until August of 2014. Though
Heather and I worked in different buildings, 200 feet apart, we saw each other daily in passing. Each
Monday morning Heather and her team of money counters were just outside of my office for the weekly
counting following the weekend masses. This process took a few hours and was in a secured area with
gentle conversation. Heather was again only kind and gentle by nature.
After I left my employment in August 2014, I was still a member of CTK and saw Heather in the parish
office where I was a frequent visitor for ministry work. I always stopped in Heather's office for a quick
greeting and once again only kindness came to me from her.

In these many years I have had the opportunity to see Heather with her children when they would come to
her office after school at CTK. I have known Steve by knowing Heather as well as Steve painting our
home. Such joy and kindness as parents and a married couple.

On Pentecost Sunday this year, Tom and I attended CTK's 12:30pm mass. Fr. Len made the difficult
announcement that a "long time employee" had stolen $775,000 from October 2023 to the time this
person was confronted. My head was spinning thinking who was this person? I knew everyone that
worked in the CTK office and approximately how long they had been there. In the rundown in my head, I
named all the employees and said to myself surely not Heather knowing she was at CTK likely the
longest.
When I was informed, I just could not believe this could happen. Not Heather! I thought surely she must
have had some acute psychological episode to do such an act. Further why would Heather destroy her
family? This behavior is not consistent with that of the woman that I have known.

As I write this to you, Judge Merryday, my heart aches at the loss of security of Heather's mother love
that will profoundly affect Jackson and Ella in their young lives if she is incarcerated. Steve would not
only face the difficulty of single parenthood, but also the pain of watching their children suffer at the loss
of their mom. I am cognizant of the fact that Heather should not have placed any of us in this situation
but I will plead for leniency because I truly believe that if she was capable of reasoning through such a
devasting consequence she would not have done this. May God have mercy on the Darrey family.

Most sincerely,

Clare Bennett

Judge Steven Merryday
Ref: Heather Darrey

Your Honor,

We (Jason and Linda Odom) have known Heather Darrey for 19 years. Heather, Steve, Jackson and Ella lived next to us in our small community of 14 homes in Tampa, Fl. During this time we vacationed together, put on neighborhood events for our community and had many family dinners together at each others home, as well as celebrated holiday events together. As her neighbor and friend, we witnessed Heather always put her family above herself. She would be the only mom outside with her kids early in the morning letting them have fun and she would be by their side every step of the way. Our oldest daughter babysat for Jackson and Ella while Heather was at work for the summers. Heather is the mom who never misses their sports games or school events. They are a close knit family.

Heather would be the first one to bring our family over meals when we had a tragedy in the family or be the first to call and ask how she could help. She would not take no for an answer and would still bring over food and lend a listening ear. Her selflessness was demonstrated as a friend, neighbor and community member. Heather has been a blessing to us and still is a dear friend.

We can not imagine how her family will function without her by their side as their kids celebrate milestones through their development as young adults. As long as we have known her she never displayed anything but the upmost integrity and love for others. We know her family has personally suffered over the recent events which were broadcast locally for her friends, family and community to witness.

We ask the court to have leniency when sentencing Heather. We will support her and her family. As a retired Deputy Sheriff and a

nurse in virtual care, we have a heart to help others and can identify those who share in that same desire. Heather has demonstrated that in her character for as long as we have known her.   We love this family. We can assure the court, Heather and her family worked very hard to make amends. We specifically pray and ask that no incarceration time be required in her sentencing.  Heather's kids, Jackson and Ella would suffer the most if this happens.  They need their mom close to them as she has always been.

Thank you for the time and consideration.

We will pray for your wisdom in this matter and mercy when making your decision.

Sincerely,
Jason and Linda Odom

August 14, 2024

RE: Heather Darrey


Good afternoon, Judge Steve Merryday:

We are writing this letter as a character reference for Heather Darrey. We have known Heather for more than 20 years, as she is a member of our extended family. Our families have lived near each other for many years and have spent a great deal of time with Heather at family gatherings and celebrations as well as in daily life settings.

We have known Heather personally to be genuine, compassionate, generous and very caring. She's always available to pitch in, support a cause or help a neighbor. She always reaches out to include and support others. She is very family focused and it is evident in how she lives her life, that Steve, Jackson and Ella are her priority.

We have found Heather to be a very loyal friend and family member over the years, whom we love dearly.

Sincerely,

Bob and Jennifer Blagg

Sheila and Cris Cruz
11805 Vera Ave
Tampa Florida 33618
8-14-2024
To Judge Steven Merryday:

I am writing this letter on behalf of my dear friend, Heather Darrey,  whom I have had the privilege of knowing for over 20 years. From the day we met, Heather has been a constant source of kindness, support, and friendship to both my husband and me.

Heather is an exceptional mother, wife, and friend. As a wife, she has been incredibly loyal and devoted to her husband, consistently putting the needs of her family above her own. Her dedication to her marriage is just one of the many ways she exemplifies commitment and love.

She has always prioritized her children's well-being, ensuring she is present and involved in every aspect of their lives, from school to extracurricular activities. My husband and I are not parents, but if we were, Heather's selflessness and dedication to her children are qualities we would strive to emulate.

Over the years, we have shared many memorable experiences together, including special weekends and countless gatherings where her generosity and thoughtfulness have always been evident. Heather consistently goes above and beyond for her friends. I know that if I ever needed anything, Heather would be just a phone call away, ready to offer her unwavering support.

Heather's character is defined by her loyalty, respectfulness, kindness, and deep care for those around her. These qualities make it difficult to imagine the profound impact that incarceration would have on her family, especially her children, who are at such a crucial stage in their development. I firmly believe that her absence would not only be emotionally devastating for them but would also hinder their ability to thrive in school and other activities that are so vital to their growth and well-being.

While I understand the importance of accountability, I ask that you take into consideration the significant impact that incarceration would have on Heather's family. Heather is deeply remorseful for her actions, and I believe that this incident is entirely out of character for her. I am confident that given the opportunity, Heather will work tirelessly to make amends and continue to be the loving, dedicated mother, wife, and friend that we all know her to be.

Thank you for your time and consideration.

Sincerely,

Sheila and Cris Cruz

*Mr. & Mrs. Mark & Stacey Abitabilo*

*403 Dennison Road*

*Lutz, Florida 33548*

*sabitabilo@me.com*

*(813) 784-3517*

*August 8, 2024*

*The Honorable Judge Steven Merryday*

*District Judge for the Middle District of Florida*

*801 N. Florida Avenue*

*Tampa, Florida 33602*

*Re: Heather Darrey*

*Dear Judge Merryday,*

*We are writing this letter to provide a character reference for Heather Darrey, who is currently involved in a legal matter before this court. We are close personal friends who feel very fortunate to have had Heather in our lives for 16 years.*

*In our experience, Heather has consistently demonstrated integrity, honesty, kindness, and compassion towards others. She has always shown respect towards others and has a reputation for being a person of good moral conscience. Heather*

*has a strong commitment to her Faith which is the way she has been able to get through this horrible time.*

*Heather volunteers doing community service without ever being asked. She gives willingly to everyone without hesitation. Heather is the most sincere, kind, and loving person that we know. She never has an unkind word to say about anyone.*

*Over our 16 years knowing Heather, we've had the pleasure of traveling with her, sharing many family events, dinners, game nights and so much more. Her children, Jackson and Ella, were in our daughter's wedding party.*

*Heather's husband is a Captain for Tampa Fire Rescue and owns his own painting company. Their children would essentially be without supervision on the days that Steve is working his 24-hour shift and then having to go on to his painting job. It would be unimaginable if Heather was incarcerated because her children are at a very impressionable age with Jackson 16 and Ella 14. Her presence is essential to their well-being.*

*We know that Heather is truly remorseful for her actions. She is committed to making restitution and to making amends to everyone she wronged. No one could be more upset and saddened, than she is towards herself. Even though she is so filled with shame for the pain she has caused everyone around her, she is mostly ashamed of how God sees her.*

*Sincerely,*

*Mark & Stacey Abitabilo*

Mr. & Mrs. Steven Beltran
4301 Gulfwinds Dr.
Lutz, Fl 33558
Stevenbeltran@gmail.com,
813-625-1523
August 12, 2024

Dear Judge, Merryday,

We are writing to you regarding Heather Darrey and her upcoming sentencing hearing. We have had the privilege of knowing Mrs. Darrey for over 20 years, and we wish to provide a heartfelt character reference in the hope that you may consider leniency and mercy in your judgment.

Throughout the years, Heather has consistently shown herself to be a person of exceptional care, thoughtfulness, and dedication. As a mother, daughter, sister, and friend, she has always been a pillar of support and compassion. Her ability to provide comfort and encouragement to those around her has made a significant and positive impact on our lives and the lives of many others.

We have seen firsthand how Heather navigates her responsibilities with grace and commitment. Her nurturing presence and selflessness have been a source of strength for her family and friends. She has faced various challenges with resilience and a positive outlook, always prioritizing the well-being of those she loves.

It is clear to us that Heather deeply regrets the actions that have led to this situation. Her remorse is genuine, and she has taken meaningful steps toward making amends and addressing the issues that contributed to her current circumstances. We believe that she has a sincere desire to learn from this experience and to continue growing as a person.

We respectfully request that you consider Heather's positive character and the significant contributions she has made to those around her when determining her sentence. We believe she deserves a second chance to show her commitment to personal growth and to continue making a positive impact in her community. Her family, particularly her son and daughter, will suffer greatly if she is incarcerated. We urge you to take into account the profound impact that her absence will have on her children and to exercise leniency in her sentencing.

Thank you for your time and consideration.

Sincerely,

Steven Beltran

Lizzette Beltran

FROM: Rev. Msgr. Desmond Daly
        Angels Senior Faculty
        18420 Exciting Idlewild Blvd
        Lutz, Florida, 33548

TO:     Judge Steven Merryday

REF:   Heather Darrey


Your Honor,

I am a retiree living at a retired living facility. I was the Pastor of Christ the King parish in Tampa from the year 2000 until my retirement in 2010. If memory serves me correctly, I hired Heather around the beginning of my pastorship there.

I hired her as a receptionist. She served very well in that position and remained in it until my retirement. I knew her to be a professional young woman, bright and cheerful, who received parishioners with great compassion at all times. She has always punctual, honest and with open demeanor. I and all my other employees loved her deeply.

Her incarceration would be totally devastating both for her and her entire family. I know that she has already made much effort to return the funds involved. I also know that, in view of that effort, the church itself has already forgiven her for what she did.

I know that Your Honor will take all these things into consideration as you make your judgement of her, and I thank you for that.

Yours respectfully,

D. Daly

August 14, 2024

Judge Steven Merryday,

I am writing in reference to Heather Darrey, whom I have known for 15 years

My name is Tobin Hart, I am a retired District Chief of Tampa Fire Rescue. I worked with Heather's husband Steve Darrey. After my retirement we all grew closer and began to have regular dinners together.

During that time I have found Heather to be a straight forward person with a true loyalty to her family and friends.

I was in shock and disbelief to hear of her actions at Christ the King Church.

I am also concerned of the consequences to her family should she be seperated from them.

I do not know what caused her to behave the way she did. I am at a complete loss.

I do understand that she is remorseful, is making restitution and is in treatment.

Although her action has caused shame and embarassment, she is replacing the financial loss and seeking treatment. I don't believe incarceration will be more effective than the course of action she is already taking at her own volition.

Thank you for your consideration,

Tobin K. Hart